IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP; TROUP COUNTY NAACP; PROJECT SOUTH; CHARLES BREWER; CALVIN MORELAND; APRIL WALTON; PAMELA WILLIAMS; JOHN DOE #1; JOHN DOE #2; and JOHN DOE #3,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF LAGRANGE, GEORGIA,<br><br>*Defendant.* | CASE NO. 3:17-cv-00067<br><br>**DOE PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS & MEMORANDUM OF LAW IN SUPPORT THEREOF** |

Plaintiffs John Doe #1, John Doe #2, and John Doe #3 (hereinafter, "Doe Plaintiffs") respectfully request leave to proceed in this lawsuit using pseudonyms. In this action, Doe Plaintiffs challenge the City of LaGrange's public utilities policy requiring applicants for services to have a Social Security Number ("SSN") and a specific form of photo identification (hereinafter referred to together as the "Immigrant Utilities Policy"). *See* Compl. ¶¶ 82-108.

Doe Plaintiffs request to proceed anonymously because they are immigrants who fear that publicly disclosing their personal and private information—including immigration-related information—could lead to civil and criminal prosecution,

1

social stigma, and retaliation.  Their anonymity, if granted, will not prejudice the defendant, the City of LaGrange, or create a risk of injury to its reputation, as Doe Plaintiffs' claims turn on purely legal questions.  For similar reasons, allowing Doe Plaintiffs to proceed anonymously will cause no unfairness to LaGrange, and will not affect the public interest in open proceedings.  Given the serious harms that could result from being forced to proceed using their real names and the absence of countervailing considerations, Doe Plaintiffs respectfully ask the Court to allow them to proceed anonymously.

## LEGAL STANDARD

Parties to a lawsuit are generally required to disclose their names when filing a complaint in federal court.  *See* Fed. R. Civ. P. 10(a); *see also* Fed. R. Civ. P. 17(a) (requiring every "action [to] be prosecuted in the name of the real party in interest").  However, "the rule is not absolute."  *Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).  The Court has discretion to protect the privacy interests of parties when they demonstrate "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'"  *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (per curiam) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).  A court should thus consider "*all* the circumstances of a given case" when deciding whether to protect a plaintiff's privacy concerns.  *Plaintiff B.*, 631 F.3d at 1316 (quoting *Frank*, 951 F.2d at 323).

The Eleventh Circuit has adopted the three-factor test articulated in *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe ("SMU")*, 599 F.2d 707 (5th Cir. 1979), to govern motions to proceed under pseudonyms. *See Plaintiff B*, 631 F.3d at 1316. Under this test, a court examines: (1) whether the plaintiff is "challenging governmental activity," (2) whether the information the plaintiff seeks to protect is of "the utmost intimacy," and (3) whether the plaintiff will be "compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution." *Id*. These factors, however, "were not intended as a rigid, three-step test for the propriety of party anonymity." *Frank*, 951 F.2d at 323. For example, courts may consider additional harms that the plaintiff could face as a result of the compelled disclosure, such as social stigma or physical harm. *See id.* at 324 (citing cases where "the social stigma attached to the plaintiffs' disclosure was found to be enough [to justify anonymity and] to overcome the presumption of openness in court proceedings."). Lastly, a court may also consider whether allowing plaintiffs to proceed anonymously would prejudice the defendant or harm the public interest. *See id.* at 323-24. For the reasons discussed below, and as other courts in the Eleventh Circuit and elsewhere have held in comparable

circumstances,[1] all factors weigh heavily in favor of permitting Doe Plaintiffs to proceed anonymously here.

## ARGUMENT

### I. DOE PLAINTIFFS SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYMS

#### a. DOE PLAINTIFFS ARE CHALLENGING GOVERNMENT ACTIVITY

The first factor considered when determining whether plaintiffs can proceed anonymously involves examining whether "the mere filing of [the] civil action" causes the defendants reputational harm, such that "[b]asic fairness" would dictate that the "the defendants' accusers who wish to participate in this suit as individual party plaintiffs . . . do so under their real names." *SMU*, 599 F.2d at 713. Here, there is no such risk of reputational injury to the only defendant in this case, the City of LaGrange, because challenges to the "constitutional, statutory or regulatory validity

---

[1] *See, e.g.*, *Frank*, 951 F.2d at 323-24 (setting forth relevant factors when considering a motion to proceed under a pseudonym); Order Granting Motion to Proceed Under Pseudonyms, *Ga. Latino Alliance for Hum. Rights v. Deal*, No. 11CV1804 (N.D. Ga. July 8, 2011) (Ex. A); *Doe v. Hobson*, 300 F.R.D. 576 (M.D. Ala. 2014); *Cent. Ala. Fair Hous. Ctr. v. Magee*, No. 2:11CV982, 2012 WL 705675, at *5 (M.D. Ala. Mar. 5, 2012); Order Granting Motion to Proceed Under Pseudonyms, *Hispanic Interest Coal. of Ala. v. Bentley*, No. 11CV2484 (N.D. Ala. Aug. 12, 2011) (Ex. B); *see also Lozano v. Hazleton*, 496 F. Supp. 2d 477, 508-09 (M.D. Pa. 2007), *aff'd in relevant part*, 620 F.3d 170, 194-96 (3d Cir. 2010); *Int'l Refugee Assistance Project v. Trump*, No. 17CV361, 2017 WL 818255 (Mar. 1, 2017); *Keller v. City of Fremont*, No. 8:10CV270, 2011 WL 41902, at *2 (D. Neb. Jan. 5, 2011); Order Granting Motion to Proceed Anonymously, *Friendly House v. Whiting*, No. 10CV1061 (D. Ariz. June 21, 2010) (Ex. C).

4

Case 3:17-cv-00067-TCB   Document 3   Filed 05/18/17   Page 5 of 13

of government activity," as a categorical matter, "involve no injury to the Government's 'reputation.'" *Id.* The nature of this case, therefore, weighs decidedly in favor of permitting Doe Plaintiffs to proceed anonymously.

### b. DISCLOSURE OF PERSONAL AND PRIVATE INFORMATION WOULD EXPOSE INTIMATE INFORMATION ABOUT PLAINTIFFS' IMMIGRATION STATUS

Protecting sensitive information relating to Doe Plaintiffs' immigration status weighs in favor of permitting them to proceed anonymously. When litigation involves "matters of a sensitive and highly personal nature . . . the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *Id.* at 712-713 (internal quotations omitted). Courts have repeatedly held that immigration status constitutes highly sensitive information that should be protected from public disclosure. *See* cases cited in note 1, *supra*.

The Doe Plaintiffs in this case are all immigrants who came to the United States from Mexico. *See* John Doe #1 Decl. ¶ 1; John Doe #2 Decl. ¶ 1; John Doe #3 Decl. ¶ 1. The very nature of a challenge to the requirement that a SSN and a federal government or State-issued ID be produced mandates that immigrants be parties to the lawsuit, as these are two requirements that many immigrants in the United States, including many who are lawfully present, are categorically unable to meet. *See* Compl. ¶¶ 85, 90. If forced to proceed using their real names, Doe Plaintiffs' names as well as evidence of their immigration status would thus become

public knowledge. Federal Courts recognize "that inquiries into immigration status can have an *in terrorem* effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position." *Lozano*, 496 F. Supp. 2d at 513-14 (citing *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002)). To avoid disclosure of such highly sensitive information and to ensure that plaintiffs are not chilled from seeking vindication of their rights through the courts, Doe Plaintiffs should be permitted to proceed under a pseudonym.

      c. DOE PLAINTIFFS RISK CRIMINAL PROSECUTION AND ADVERSE IMMIGRATION CONSEQUENCES IF THEIR IDENTITIES BECOME PUBLIC

Doe Plaintiffs' privacy interests are weightier still because requiring them to use their real names would force them to risk criminal prosecution and possibly deportation in order to participate in this lawsuit. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (noting that "[b]y revealing their immigration status, any plaintiffs found to be undocumented might face criminal prosecution and deportation"); *see also E.E.O.C. v. Signal Int'l, L.L.C.*, No. CIV.A. 12-557, 2013 WL 4854136, at *1 (E.D. La. Sept. 10, 2013) ("Even if intervenors' current immigration status was relevant to the claims asserted by the EEOC, discovery of such information would . . . subject such an employee to potential deportation.").

Doe Plaintiffs reasonably fear that they will be targeted for civil and criminal penalties if it becomes publicly known that they are participating in this lawsuit. *See*

Doe #1 Decl. ¶ 30; Doe #2 Decl. ¶ 20; Doe #3 Decl. ¶¶ 14, 19.  For example, federal immigration enforcement officers may take Doe Plaintiffs' participation in this lawsuit, and particularly their admissions that they are ineligible to obtain a SSN and a photo ID issued by the Unites States or one of its States, *see* Doe #1 Decl. ¶¶ 6, 8; Doe #2 Decl. ¶¶ 6, 8; Doe #3 Decl. ¶¶ 6, 8, as evidence of their deportability.  They also worry that participation in this lawsuit itself could provide immigration agents with the dates and location information they need to easily locate Doe Plaintiffs at key lawsuit-related activities.[2]  *See* Doe #1 Decl. ¶ 30; Doe #2 Decl. ¶ 21; Doe #3 Decl. ¶ 19.  If not allowed to proceed pseudonymously, Doe Plaintiffs fear that attending court proceedings itself could place them in at risk of harm given the

---

[2] Immigration and Customs Enforcement ("ICE") has increased enforcement operations at courthouses and at court-mandated activities. *See* James Queally, *ICE Agents Make Arrests at Courthouses, Sparking Backlash from Attorneys and State Supreme Court*, L.A. Times (Mar. 16, 2017), http://lat.ms/2ms4WNe ("[I]n the past few weeks, attorneys and prosecutors in California, Arizona, Texas and Colorado have all reported teams of ICE agents—some in uniform, some not—sweeping into courtrooms or lurking outside court complexes, waiting to arrest immigrants who are in the country illegally."); *see also* Chris Perez, *Immigration Agents in Texas Take 26 Parolees into Custody*, NY Post. (Mar. 27, 2017), http://nyp.st/2o4kETZ ("More than two dozen parolees — suspected of living in the country illegally — were arrested in Texas over the weekend as they reported for work-detail sentences for various crimes."); Beth Brogan & Jake Bleiberg, *Immigration Agents Swoop into Portland Courthouse, Seize Somali Man*, WGME (Apr. 6, 2017), http://wgme.com/news/local/immigration-agents-swoop-into-portland-courthouse-seize-somali-man ("Immigration and Customs Enforcement agents on Thursday seized a Somali man believed to be an asylum seeker inside a Portland courthouse [who was appearing for a scheduled court date], after the man pleaded not guilty to a misdemeanor charge.").

Trump Administration's articulated plan to continue arresting immigrants at courthouses.[3]  *See* Doe #1 Decl. ¶ 30; Doe #2 Decl. ¶ 21.  Doe Plaintiffs justifiably fear being forcibly returned to their home countries, causing them to be separated from their families, and depriving their U.S. citizen children of their material and emotional support. Doe #1 Decl. ¶¶ 31-32; Doe #2 Decl. ¶ 22; Doe #3 Decl. ¶¶ 20-21.  The pursuit of "[j]ustice should not carry such a high price." *Plaintiff B*, 631 F.3d at 1319.  These grave potential consequences weigh in favor of allowing Doe Plaintiffs to proceed in anonymity.

> d. DOE PLAINTIFFS COULD FACE SOCIAL STIGMA, HARASSMENT, AND RETALIATION IF THEIR IDENTITIES ARE MADE PUBLIC

The current anti-immigrant environment also weighs in favor of allowing Doe Plaintiffs to proceed under pseudonyms.  *See Lozano*, 620 F.3d at 195 (anonymity warranted where "ethnic tensions had escalated" and plaintiffs "would face an 'exponentially greater' risk of harassment, and even physical danger, if their identities were revealed") (citation omitted); *Stegall*, 653 F.2d at 186 (finding that anonymity is warranted where plaintiffs faced "extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint reflected in plaintiffs' complaint.").

---

[3] *See* Tal Kopan, *Trump Administration Says ICE Courthouse Arrests Will Continue*, CNN (Mar. 31, 2017), http://cnn.it/2pY3t3M.

Doe Plaintiffs are aware of anti-immigrant sentiment in LaGrange that can and has resulted in verbal harassment of those in the immigrant community. *See* Doe #1 Decl. ¶¶ 25-26; Doe #2 Decl. ¶¶ 18-19; Doe #3 Decl. ¶¶ 15-16. They worry that exposing their true names, particularly when coupled with information related to their immigration status, could make them and their families—including their children—targets of social stigma and harassment. *See* Doe #1 Decl. ¶ 27; Doe #2 Decl. ¶ 23; Doe #3 Decl. ¶¶ 2, 17. The disclosure of their names and other information in a community like LaGrange, where less than five percent of the population is Latino,[4] further exacerbates their fear, as Doe Plaintiffs could be easily identified.

Doe Plaintiffs are also concerned that the City of LaGrange may retaliate against them because of their participation in this lawsuit.[5] Doe #1 Decl. ¶¶ 28-29; Doe #2 Decl. ¶¶ 16-17; Doe #3 Decl. ¶ 18. Doe Plaintiffs fear that the City would

---

[4] According to the U.S. Census Bureau, in 2015 LaGrange had a population of approximately 30,000 individuals, of which 44.5% were non-Hispanic Whites; 48% were non-Hispanic Black or African American; and 4.7% were Hispanic or Latino. *See* QuickFacts LaGrange city, Georgia, U.S. Census Bureau, https://www.census.gov/quickfacts/table/VET605215/1344340 (last visited May 17, 2017).

[5] By participating in this lawsuit, Doe Plaintiffs are publicly acknowledging that they are using public utilities accounts that appear under the names of third parties. *See* Compl. ¶¶ 181, 189, 201. Doe Plaintiff #3, in particular, is concerned that he could be prosecuted under LaGrange Municipal Code § 20-1-11, which criminalizes "obtain[ing] or attempt[ing] to obtain utility service by deceitful means or artful practice . . . ." *See* Compl. ¶ 202.

cut off their utilities if it learned their true identities, *see* Doe #1 Decl. ¶ 28; Doe #2 Decl. ¶ 16; Doe #3 Decl. ¶ 14, and/or would prevent them from getting utility accounts in their own name if and when the Immigrant Utilities Policy changes, *see* Doe #1 Decl. ¶ 29; Doe #2 Decl. ¶ 17; Doe #3 Decl. ¶ 18.

These risks of social stigma and retaliation weigh heavily in favor of permitting the Doe Plaintiffs to proceed pseudonymously. *See Frank*, 951 F.2d at 323-24 (risk of "social stigma" or "physical harm" weighs in favor of allowing plaintiffs to proceed under pseudonyms).

   e. PERMITTING DOE PLAINTIFFS TO PROCEED UNDER PSEUDONYMS DOES NOT CREATE A RISK OF UNFAIRNESS FOR THE DEFENDANT OR HARM THE PUBLIC INTEREST

There is no risk of unfairness to LaGrange if Doe Plaintiffs proceed anonymously. The crux of this challenge rests solely on the legal validity of LaGrange's Immigrant Utilities Policy and will not turn on questions related to the Plaintiffs' background or credibility. Doe Plaintiffs seek only equitable relief, and not damages, and thus their actual identities have no bearing on the legal questions involved in this suit: whether the City of LaGrange's requirement that applicants produce a SSN and a photo ID issued by the federal government or one of its States when contracting for public utilities violates the Fair Housing Act and/or Georgia common law. *See* Compl. ¶¶ 206-18.

Doe Plaintiffs, moreover, are in the group of individuals who are categorically, and indisputably, affected by the City of LaGrange's Immigrant Utilities Policy. They are immigrants residing in LaGrange who lack a SSN and an acceptable photo ID, and who, therefore, cannot contract for utilities with the City. These basic facts are not subject to genuine dispute by Defendant. Where, as here, a case will not "be determined by plaintiff's credibility or recitation of facts . . . the inconvenience to defendants [in allowing plaintiffs to proceed anonymously] should be relatively low." *Doe v. Barrow County, GA*, 219 F.R.D. 189, 196 (N.D. Ga. 2003).

Additionally, permitting Doe Plaintiffs to proceed pseudonymously will not affect the public's interest in open proceedings. The public's interest in the "assurance of fairness" obtained through open proceedings "is not lost when one party's cause is pursued under a fictitious name." *Stegall*, 653 F.2d at 185. Failing to protect the privacy rights of Doe Plaintiffs, however, would have colossal consequences on their ability to vindicate their rights. Indeed, Doe Plaintiffs are unlikely to proceed with this case if required to use their real names, *see* Doe #1 Decl. ¶ 24; Doe #2 Decl. ¶ 15; Doe #3 Decl. ¶ 13, which would run counter to the public's interest in legal disputes such as this one being addressed and resolved through the judicial process. *See Hobson*, 300 F.R.D. at 577 (noting that "it would be extremely difficult for [plaintiff's] claims to be prosecuted and unlikely that they

or the class of individuals they seek to represent will be able to vindicate their rights" if plaintiffs were not permitted to proceed anonymously); *see also Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("[T]here is substantial public interest in ensuring that cases like the Plaintiff's are adjudicated and the rights of mental illness sufferers are represented fairly and without the risk of stigmatization."). It is thus in the public's interest for Doe Plaintiffs to challenge the legality of the Immigrant Utilities Policy while proceeding under pseudonyms.

## CONCLUSION

For the reasons discussed above, Doe Plaintiffs request that this Court grant their motion for leave to proceed under pseudonyms.

Dated: May 18, 2017

Respectfully submitted,

/s Atteeyah Hollie
Sarah Geraghty
Georgia Bar No. 291393
Atteeyah Hollie
Georgia Bar No. 411415
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street N.W.
Atlanta, GA 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org
ahollie@schr.org

Reed N. Colfax*
Jamie L. Crook*

/s Justin B. Cox
Justin B. Cox
Georgia Bar No. 17550
NATIONAL IMMIGRATION LAW
CENTER
1989 College Ave. NE
Atlanta, GA 30317
(678) 279-5441
(213) 639-3991 (fax)
cox@nilc.org

Karen C. Tumlin*
Melissa S. Keaney*

Joseph J. Wardenski*
Alexa T. Milton*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (fax)
rcolfax@relmanlaw.com
jcrook@relmanlaw.com
jwardenski@relmanlaw.com
amilton@relmanlaw.com

Mayra B. Joachin*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 1600
Los Angeles, CA 90010
(213) 639-3900
(213) 639-3911 (fax)
tumlin@nilc.org
keaney@nilc.org
joachin@nilc.org