IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE | : | |
| OF THE NAACP; TROUP COUNTY | : | |
| NAACP; PROJECT SOUTH; | : | |
| CHARLES BREWER; CALVIN | : | |
| MORELAND; APRIL WATSON; | : | |
| PAMELA WILLIAMS; JOHN DOE #1; | : | CASE NO. 3:17-CV-67-TCB |
| JOHN DOE #2; and JOHN DOE #3 | : | |
| | : | JURY TRIAL DEMANDED |
| *Plaintiffs*, | : | |
| | : | |
| V. | : | |
| | : | |
| CITY OF LAGRANGE, GEORGIA; | : | |
| | : | |
| *Defendant*. | : | |

**MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

Defendant City of LaGrange, Georgia, through counsel, hereby moves to dismiss with prejudice Plaintiffs' Complaint, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

WHEREFORE, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint for the reasons set forth in the accompanying Brief in Support of Defendant's Motion to Dismiss.

Respectfully submitted this 21st day of July, 2017.


/s/ Jeffrey M. Todd
JEFFREY M. TODD
Attorney for Defendant
Georgia Bar No: 713738

LEWIS, TAYLOR & TODD, P.C.
205 N. Lewis Street, Suite 3
P.O. Box 1027
LaGrange, Georgia 30241
PHONE: 706-882-2501
FAX: 706-882-4905
EMAIL: jtodd@lttpc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE | : | |
| OF THE NAACP; TROUP COUNTY | : | |
| NAACP; PROJECT SOUTH; | : | |
| CHARLES BREWER; CALVIN | : | |
| MORELAND; APRIL WATSON; | : | |
| PAMELA WILLIAMS; JOHN DOE #1; | : | CASE NO. 3:17-CV-67-TCB |
| JOHN DOE #2; and JOHN DOE #3 | : | |
| | : | JURY TRIAL DEMANDED |
| *Plaintiffs*, | : | |
| | : | |
| V. | : | |
| | : | |
| CITY OF LAGRANGE, GEORGIA; | : | |
| | : | |
| *Defendant*. | : | |

**DEFENDANT CITY OF LAGRANGE, GEORGIA'S BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STANDARD FOR DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    42 U. S. C. Section 3604(b) *Does Not* Support a Claim Under the Disparate-Impact Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Fair Housing Act Does Not Reach Alleged Discrimination Against Those Who Have Already Acquired and Are in Possession of Their Homes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Plaintiffs' Allegations Cannot Survive Analysis under <u>Inclusive Communities</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             Utility Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             Civil Judgment Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

      D.    Plaintiffs' Alleged State Law Causes of Action . . . . . . . . . . . . . . . . . . 13

      E.    Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims . . . . . . . . . . . . . . . . . . . . . .18

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

## TABLE OF AUTHORITIES

CASES                                                                    PAGES

Ashcroft v. Iqbal,
    556 U. S. 662, 679 (2009) ...................................................................3

Bell Atl. Corp. v. Twombly,
    550 U.S. 554, 570 (2007); 127 S. Ct. 1955, 1974....................................3

Carenegie-Mellon Univ. v. Cohill,
    484 U.S. 343 (1988)........................................................................ 18

City of Dunnwoody v. Discovery Practice Management, Inc.,
    338 Ga. App. 135, 141 (2016)...........................................................13

F. M. Roberts Pest Control Co. v. McDonald,
    132 Ga. App. 257, 260 (1974)............................................................16

Fin. Sec. Assur., Inc. v. Stephens, Inc.,
    500 F.3d 1276, 1282-83 (11th Cir. 2007)…………………………………...4

Flowers v. Troup County, Ga., Sch. Dist.,
    1 F.Supp. 3d 1363, 1382 (N.D. Ga. March 5, 2014) (Batten, J.) ………………18

Gaslight Co. of Columbus v. Georgia Power Co.,
    225 Ga. 851 (1969) ........................................................................14

Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey,
    276 F. Supp. 2d 1222, 1233 (M. D. Fla. 2003), vacated on other grounds, No.
    8:02CV1955T30TGW, 2003 WL 22149660 (M. D. Fla. September 16, 2003) .....9

Jacobs v. Tempur-Pedic Int'l, Inc.,
    626 F.3d 1327, 1333 (11th Cir. 2010)……………………………………………4

Lawrence v. Courtyards at Deerwood Ass'n,
    318 F. Supp. 2d 1133, 142 (S. D. Fla. 2004) .........................................9

NEC Technologies, Inc. v. Nelson,
    267 Ga. 390 (1996). ........................................................................16

Paulk v. Georgia Department of Transportation,
    CV516-19, 2016 WL 3023318, May 24, 2016......................................8

Phigenix, Inc. v. Genentech, Inc.,
    Case No. 1:14-CV-287, 2015 WL 10910488, at *1-2 (N. D. Ga. Mar. 12, 2015). .4

Porter v. City of Atlanta,
    259 Ga. 526 (1989), certiorari denied 110 S. Ct. 1297, 494 U. S. 1003...............17

R. L. Kimsey Cotton Co. v. Ferguson,
    233 Ga. 962, 966 (1975) ................................................................16

Scarfo v. Ginsberg,
    175 F.3d 957 (11th Cir. 1999) .........................................................18

Steele v. City of Port Wentworth, Ga.,
    No. CV405-135, 2008 WL 717813, *12 (S. D. Ga. March 17, 2008) ...................9

Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project,
Inc.,
    135 S. Ct. 2507 (2015) ...................................................................2

Walton Elec. Membership Corp. v. Snyder,
    226 Ga. App. 673 (1997)................................................................15

## STATUTES

O.C.G.A. § 13-5-30(2)....................................................................15

O.C.G.A. § 17-10-20 .......................................................................3

O.C.G.A. § 36-35-3(a) ....................................................................17

O.C.G.A. § 36-82-60 ......................................................................17

O.C.G.A. § 46-3-170, et seq..............................................................................16

28 U. S. C. § 1332……………………………………………………….... 18

28 U. S. C. § 1367……………………………………………………….... 18

42 U. S. C. § 3604……………………………………………………….......... 1

## I.     <u>INTRODUCTION</u>

Through the Complaint, Plaintiffs attack two plainly legitimate, long-term policies of the Defendant City of LaGrange ("City") which were adopted by the Mayor and Council pursuant to their responsibility to protect the public coffers.  Such policies are designed to properly encourage the payment of funds owed the City in its role as a local utility provider, as well as through its Municipal Court.  Finding no state statutory prohibition which prevents the implementation of these common-sense policies, Plaintiffs attempt to stretch the disparate-impact element of the Fair Housing Act (42 U. S. C. 3604(b)) to reach the City's policies.  As will be demonstrated below, the plain language of the Fair Housing Act, as well as subsequent interpretative court decisions, prohibit its application to the circumstances at bar.  Moreover, Plaintiffs' misplaced state law theories of recovery do not support a valid cause of action.

First, although the United States Supreme Court recently endorsed recovery under the disparate-impact theory for claims under 42 U. S. C. § 3604(a), the express language of the Court's 5-4 decision prevents its holding from being extended to Plaintiffs' claims, which are under 42 U. S. C. § 3604(b).

Second, courts in this Circuit have held that the Fair Housing Act does not reach conduct which occurs *after* the housing sale or rental transaction, and it is this type of post-acquisition conduct that Plaintiffs allege.

1

Third, and in the alternative, even if one assumes that the disparate-impact theory of recovery is available under § 3604(b), application of the standards of the Supreme Court's decision in Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507 (2015), shows Plaintiffs' Complaint fails to state a claim. The City's policies are reasonable and may not be alleged to be "artificial, arbitrary and unnecessary." Moreover, Plaintiffs do not (and cannot) plead the "robust causality" required to state a disparate-impact claim under Inclusive Communities.

Finally, Plaintiffs' state law theories of recovery do not support a valid cause of action against the City.

## II.   SUMMARY OF ALLEGATIONS

Among the Plaintiffs are six individuals who, according to the Complaint, are currently receiving multiple utility services from the City. (Complaint, Paragraphs 135, 150, 164, 185, 189 and 201). The Complaint alleges three John Doe Plaintiffs have been harmed by the City's policy which requires a new utility customer to supply both his or her Social Security Number, as well as state or federal issued photo identification (hereafter sometimes "Utility Policy"). (Complaint, Paragraph 11). The Complaint alleges the remaining utility customer Plaintiffs to have been harmed by the City's ordinance which requires an individual to pay all debts owed to the City in order

2

to receive City utilities (hereafter "Civil Judgment Policy").  (Complaint, Paragraph 3).  Plaintiffs admit that the individual named utility customers (Brewer, Walton and Moreland) receive utilities in spite of also having other City debts.  In each instance, the debt at issue stems from a civil judgment obtained by the City as a result of unpaid Municipal Court fines. This is expressly authorized by Georgia law.  O.C.G.A. § 17-10-20.  Plaintiffs also assert that the Utility Service Application and Contract For Services signed by each of the named Plaintiffs conditions utility services on payment of all debts owed the City.  (Complaint, Exhibit B).

III.   **STANDARD FOR DISMISSAL**

In order to avoid dismissal under Rule 12(b)(6), Plaintiffs must plead "enough facts to state a claim that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "Plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly at 555.  Courts "are not bound to accept as true legal conclusions couched as factual allegations."   Id. at 555.  "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court draw on its experience and common sense."  Ashcroft v. Iqbal, 556 U. S. 662, 679 (2009).

"Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery from a plaintiff armed with nothing more than conclusions."  Iqbal at 678-79; see also Phigenix, Inc. v. Genentech, Inc., Case No. 1:14-CV-287, 2015 WL 10910488, at *1-2 (N. D. Ga. Mar. 12, 2015).  "Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" Iqbal at 679.

At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quotations and citation omitted).  Allegations now must be well-plead and nudge a claim "across the line from conceivable to plausible." Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotation omitted) (citing Twombly, 550 U.S. at 570).

## IV.   ARGUMENT

### A.   42 U. S. C. Section 3604(b) *Does Not* Support a Claim Under the Disparate-Impact Theory.

4

Plaintiffs' first cause of action, and sole federal cause of action, is for relief under 42 U. S. C. § 3604(b) of the Fair Housing Act.  (Complaint, Paragraphs 206-213).  Said subsection renders it unlawful:

> "To discriminate against any person in the terms, conditions, or privileges of sale or rental of the dwelling, or in the provision of services or facilities *in connection therewith, because of* race, color, religion, sex, familial status, or national origin."  (Emphasis supplied).

The court will note that the activity prohibited in § 3604(b) must be undertaken "because of" the person's protected status.  Thus, in order for a plaintiff to state a claim under said subsection, the allegations *must* assert intentional discrimination.  Despite the plain language of § 3604(b), Plaintiffs' theory is that the City did not intend for the policies at issue to have a discriminatory effect on protected persons (which would constitute "disparate-treatment"), but that the policies nonetheless have a forbidden discriminatory impact (or "disparate-impact").  However, the disparate-impact theory of recovery is plainly not available under § 3604(b).

Indeed, until 2015, the United States Supreme Court had not ruled as to whether the disparate-impact theory was cognizable under any portion of the Fair Housing Act.

In Inclusive Communities, however, the Court ruled that § 3604(a) *does* support disparate-impact claims, but for reasons which foreclose this Court's finding that § 3604(b) can similarly support a claim for disparate-impact.

In determining that 42 U. S. C. § 3604(a) allows for claims outside of intentional discrimination, the Supreme Court reviewed the text of the subsection, which states as follows:

> "It shall be unlawful - - (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or *otherwise make unavailable* or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  (Emphasis supplied)

The Court's disparate-impact and disparate-treatment analysis focused on Congress' use of the phrase "otherwise make unavailable" when establishing the conduct to be prohibited. Id. at 2518.  In fact, the Court found the phrase to be "of central importance," and determined that "Congress' use of the phrase 'otherwise make unavailable' refers to the consequences of an action rather than the actor's intent." Id.

Drawing on parallels to other anti-discrimination statutes, the Court further stated that:

"Title VII's and the ADEA's 'otherwise adversely affect' language is equivalent in function and purpose to the FHA's 'otherwise make unavailable' language.   In these three statutes, the operative text looks to results.   The relevant statutory phrases, moreover, play an identical role in the structure common to all three statutes: Located at the end of lengthy sentences that begin with prohibitions on disparate-treatment, they serve as catch-all phrases looking to consequences, not intent.   And all three statutes use the word 'otherwise' to introduce the results-oriented phrase. 'Otherwise' means 'in a different way or manner,' thus signaling a shift in emphasis from an actor's intent to the consequences of his actions." Id. at 2519.

§ 3604(b), unlike subsection (a), does *not* contain the "catch-all" phrase, but instead prohibits actions undertaken "because of" race, national origin, or other protected status.   As Plaintiffs' sole theory under § 3604(b) is one of disparate-impact, Plaintiffs' Complaint does not state a cause of action against the City.

**B.     The Fair Housing Act Does Not Reach Alleged Discrimination Against Those Who Have Already Acquired and Are in Possession of Their Homes.**

Pretermitting the question of whether disparate-impact is a valid theory of recovery in this case, Plaintiffs' federal claims should also be dismissed because the Fair Housing Act does not apply to post-acquisition activity.  The interpretation urged by the Plaintiffs' Complaint presupposes that the Fair Housing Act is a general discrimination statute, rather than one aimed at specific problems in the acquisition of housing.

Whether allegations of discrimination beyond the point of sale or lease state a claim under § 3604(b) was recently addressed in the Southern District of Georgia. <u>Paulk v. Georgia Department of Transportation</u>, CV516-19, 2016 WL 3023318, May 24, 2016.  The Court ruled that such claims do not relate to the "sale or rental" of housing as required under § 3604(b), stating:

> "Plaintiffs' factual allegations do not implicate Section 3604(b).  First, Defendants' allegedly discriminatory conduct does not relate to the 'sale or rental' of housing.  There is a split of authority as to whether Section 3604(b) applies to the provision of services only in connection with the sale or rental of housing, or whether it extends to

8

services beyond the point of sale.  See Steele v. City of Port Wentworth, Ga., No. CV405-135, 2008 WL 717813, at *12 (S. D. Ga. March 17, 2008) (collecting cases).  However, it appears that Courts in the Eleventh Circuit that have considered this issue have applied the narrower construction, on the grounds that it is 'more consistent with the plain language of the statute.' Id.; see also Lawrence v. Courtyards at Deerwood Ass'n, 318 F. Supp. 2d 1133, 1142 (S. D. Fla. 2004); Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, 276 F. Supp. 2d 1222, 1233 (M. D. Fla. 2003), vacated on other grounds, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M. D. Fla. September 16, 2003).  As this appears to be the better reasoned interpretation, the Court follows this approach here and finds that the statute does not encompass Defendants' alleged discrimination against those who have already acquired and are now in possession of their homes." Paulk, Pages 12, 13.

9

As the Fair Housing Act is aimed at discrimination in the provision of housing, and not at subsequent, post-acquisition services, Plaintiffs' Complaint should be dismissed for failure to state a claim.

### C.    Plaintiffs' Allegations Cannot Survive Analysis under <u>Inclusive Communities</u>.

Even assuming, arguendo, that the text of § 3604(b) supports a disparate-impact claim, Plaintiffs' Complaint fails to state a claim under the Supreme Court's restrictions placed on the doctrine in <u>Inclusive Communities</u>.

The <u>Inclusive Communities</u> Court severely narrowed application of the disparate-impact theory of liability for claims under § 3604(a) recognizing the dangers of applying the Fair Housing Act in such a manner as to impose disparate-impact liability upon a showing of mere statistical disparity.  In so doing, the Court established a threshold for disparate-impact claims that Plaintiffs fail to reach here.

First, the Court held that "governmental policies are not contrary to the disparate-impact analysis unless they are 'artificial, arbitrary and unnecessary barriers.'" <u>Id.</u> at 2524

Second, the Court imposed at the pleading stage "a robust causality requirement (to) insure that 'racial imbalance . . . does not, without more, establish a prima facie case of disparate-impact' and thus protects defendants from being held liable for racial

10

disparities they did not create." Id. at 2523.

With these two stringent standards controlling the analysis, Plaintiffs' Complaint does not survive the pleading stage. The City's policies are not, and are not even alleged to be, "artificial, arbitrary and unnecessary." The most the Complaint alleges is "mere statistical disparity" and that falls far short of "robust causality."

**Utility Policy**

Plaintiffs' allegations attacking the City's long-term policy requiring Social Security Number and proof of identification for utility applications ignores Inclusive Communities and the authority of the Mayor and Council to adopt legitimate policies deemed to be in the City's best interests. Instead, Plaintiffs rely solely on policy arguments. The crux of Plaintiffs' policy argument is three-fold: (1) the City is not mandated by federal law to require a Social Security Number and state or federal issued form of identification; (2) some other utility providers do not impose such requirements; and (3) the City has available to it, but did not choose, other alternatives.

The City does not contend that its policies are mandated, or even the only policy options available to the City. Plaintiffs' burden, however, even at the pleading stage, is not to demonstrate that any alternate policy is "preferred" but that the *current policy is unlawful*. Under the mandates of Inclusive Communities, this Plaintiffs cannot accomplish.

11

The City's requirement that utility customers provide a Social Security Number and valid state or federal government issued identification is a rational and reasonable requirement for establishing customer utility accounts, which are necessarily paid in arrears.  Indeed, Plaintiffs' own Complaint references the obligation of the City under the Fair and Accurate Credit Transactions Act to take reasonable steps to prevent identify theft.  (Complaint, Paragraphs 103, 104).  Defendant City has chosen policies which accomplish that very goal.  Plaintiffs have not alleged, and could not reasonably assert, that such policies are "artificial, arbitrary and unnecessary."

Moreover, as to the causality issue, it is not the status of the John Doe Plaintiffs as Latinos which is the reason each lacks a Social Security Number or government issued identification.  National origin is, in this circumstance, irrelevant.  Instead, it is the John Doe Plaintiffs' inability to have their identity verified which prevents each from having the tools necessary for the credit check and identity fraud aspects of the utility application process.  The Fair Housing Act simply does not encompass their situation.

## Civil Judgment Policy

Neither have Plaintiffs pointed to the "robust causality" necessary to state a claim on behalf of the African American Plaintiffs who have civil judgments in favor of the City attached to their utility accounts.  Plaintiffs would have a difficult time

positing otherwise, and have thus plead "mere statistical disparity." (Complaint, Paragraphs 72, 43, 44).

Furthermore, it is axiomatic that the lawful collection of civil judgments is not an "artificial, arbitrary and unnecessary" policy.

The Georgia General Assembly enacted O.C.G.A. § 17-10-20, which expressly allows unpaid Municipal Court fines to be converted into collectable civil judgments. To state that methods which improve collection of lawful debts are "artificial, arbitrary and unnecessary" is a contention which Plaintiffs cannot make under the precepts of the Inclusive Communities decision. Moreover, "municipal ordinances are entitled to a presumption of validity, and will be sustained unless clearly invalid." City of Dunnwoody v. Discovery Practice Management, Inc., 338 Ga. App. 135, 141 (2016).

Plaintiffs obviously disagree with the policies chosen by the elected officials of the City, and would prefer that City officials implement relaxed policies which would necessarily lead to increased losses of utility revenue and Municipal Court fines. However, as demonstrated above, the policies chosen by the City are a legitimate exercise of legislative discretion and do not contravene the Fair Housing Act.

### D.   Plaintiffs' Alleged State Law Causes of Action.

Plaintiffs cite two Georgia Appellate Court decisions in support of the purported state law claims of "tortious interference with utility contracts" and

13

"unconscionability."  For the reasons explained below, each case refers to a cause of action which is not applicable to the facts as plead in the Plaintiffs' Complaint.

First, neither case involves a municipality, which operate under distinctly different regulations than those governing regulated public utilities or statutorily created electric cooperatives.  Second, the facts of each case bear no relation to the issues of Plaintiffs' Complaint.  For these reasons, the cases may not serve as a legitimate basis for Plaintiffs' allegations against a municipal service provider.

The 1969 decision in Gaslight Co. of Columbus v. Georgia Power Co., 225 Ga. 851 (1969), concerned a deed covenant imposed upon land formerly owned by Georgia Power Company.  While the land was ultimately developed for residential use around Lake Oliver, a deed restriction in the chain of title required owners of the land to use electricity for all appliances.  Id. at 852.  While the Court found the deed restriction to be unlawful, it did so based on the status of Georgia Power Company as "an electric company."  Georgia Power Company is subject to statutory and regulatory provisions which are distinct in form and substance from a municipality which provides electric service.  In short, the City is not a regulated "electric company" and is not subject to the same regulatory framework as "regulated utilities" such as Georgia Power Company.

Also, Plaintiffs' allegations concern the provision of utilities other than electricity (water, gas), yet have cited no case or statute which prohibits the City's policies for water or gas services.

While the City is treating similarly situated customers uniformly and fairly, the above-cited statutes show that the City is not a regulated utility, and that the Gas Light Company case is not relevant in these proceedings.  Thus, Plaintiffs have failed to plead a duty which has been breached by the City, which is a critical element of their state law tort claim.

The second case offered by Plaintiffs to underpin their alleged state law claims is Walton Elec. Membership Corp. v. Snyder, 226 Ga. App. 673 (1997).  Again, the facts of the Walton case are far from analogous to Plaintiffs' claims.  In Walton, the electric membership corporation terminated electric service to a customer whose account was not delinquent.  The customer had married a woman who had a delinquent balance from a previous home account, and the provider unilaterally attached the indebtedness of the wife to the customer's account.  Among other theories, the Court noted that such an assumption of the debt of another must be accomplished in writing under the Statute of Frauds (O.C.G.A. § 13-5-30(2)), and was unlawful.  Id. at 675.

Most importantly, in finding that Walton EMC had breached its duty to serve the customer, the Court cited to the specific obligation of electric membership

15

corporations (O.C.G.A. § 46-3-170, et seq.), not municipalities.  Finally, Plaintiffs' reliance on Walton is misplaced precisely because it stemmed from holding an electric customer responsible for the debt of another.  The LaGrange Civil Judgment Policy, to the contrary, merely requires all customers to be responsible for lawfully obtained judgments in favor of the City.

Finally, with no citation to a case or statute, Plaintiffs claim that the court judgment policy of the City is "procedurally and substantively unconscionable, inherently unjust and abhorrent."

The law relating to procedural and substantive unconscionability refers to contracts, not the underlying ordinance, which is a valid exercise of the City's authority.  Nonetheless, even assuming the "court judgment policy" were solely implemented via the utility application contract, the terms of the contract are not, as a matter of law, "such . . . as no sane (person) not acting under delusion would make and that no honest (person) would take advantage of."  R. L. Kimsey Cotton Co. v. Ferguson, 233 Ga. 962, 966 (1975).  Nor is the utility agreement "abhorrent to good morals and conscience (or) one where one of the parties takes fraudulent advantage of another." F. M. Roberts Pest Control Co. v. McDonald, 132 Ga. App. 257, 260 (1974).

Procedural and substantive unconscionability is a question to be decided by the Court as a matter of law.  NEC Technologies, Inc. v. Nelson, 267 Ga. 390 (1996).

16

As opposed to the cases cited by Plaintiffs in support of their state law claims, the controlling law is actually quite simple and longstanding.  The Municipal Home Rule Act of 1965 authorizes "the governing authority of each municipal corporation . . . to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto."  O.C.G.A. § 36-35-3(a).  Thus, determining the validity of an ordinance or regulation is a two-step process.  First, a court must determine whether the local government possess power to enact the ordinance or regulation at issue, and then, assuming such power exists, the court must determine whether the ordinance is clearly reasonable.   Porter v. City of Atlanta, 259 Ga. 526 (1989), certiorari denied 110 S. Ct. 1297, 494 U. S. 1003.

The allegations of Plaintiffs' Complaint do not call into question the authority of the City to operate its utility enterprises, as such is expressly provided for in the City of LaGrange Charter and Georgia law.  The Charter of the City of LaGrange, Section 5.11; O.C.G.A. § 36-82-60, et seq. (Revenue Bond Law).  Neither have Plaintiffs credibly alleged that the policies at issue are not "clearly reasonable."

17

**E.**     **Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims.**

While the Complaint seeks to have the Court exercise supplemental jurisdiction under 28 U. S. C. § 1367(a), the Court should still decline to exercise its supplemental jurisdiction because Plaintiffs fail to state a federal law claim.  While § 1367(a) allows district courts to exercise supplemental jurisdiction over state law claims transactionally related to a federal law claim, § 1367(c)(3) provides that a court may decline such jurisdiction when it has dismissed all the federal claims on which the supplemental jurisdiction is based.  Hence, when federal law claims are dismissed in the early stages of a lawsuit and only the state law claims remain, courts should decline to exercise jurisdiction over the remaining claims and instead dismiss the case. Carenegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988); Scarfo v. Ginsberg, 175 F.3d 957 (11th Cir. 1999); see Flowers v. Troup County, Ga., Sch. Dist., 1 F.Supp. 3d 1363, 1382 (N.D. Ga. March 5, 2014) (Batten, J.) (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims at summary judgment stage of litigation).

As demonstrated above, Plaintiffs have failed to state a federal claim.  There is no suggestion in the Complaint that subject matter jurisdiction is based on diversity of citizenship under 28 U. S. C. § 1332.  There is no remaining claim over which the

Court has original jurisdiction absent a federal law claim.  Accordingly, the Court should also dismiss Plaintiffs' state law claims.

## V.   **CONCLUSION**

As demonstrated above, subsection 3604(b) of the Fair Housing Act does not reach the alleged activity asserted by Plaintiffs in the Complaint.  Plaintiffs' state law claims likewise fail to properly plead any plausible entitlement to relief.  For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted this 21st day of July, 2017.

/s/ Jeffrey M. Todd
_____
JEFFREY M. TODD
Attorney for Defendant
Georgia Bar No: 713738

LEWIS, TAYLOR & TODD, P.C.
205 N. Lewis Street, Suite 3
P.O. Box 1027
LaGrange, Georgia 30241
PHONE: 706-882-2501
FAX: 706-882-4905
EMAIL: jtodd@lttpc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA STATE CONFERENCE : 
OF THE NAACP; TROUP COUNTY : 
NAACP; PROJECT SOUTH; : 
CHARLES BREWER; CALVIN : 
MORELAND; APRIL WATSON; : 
PAMELA WILLIAMS; JOHN DOE #1; :     CASE NO. 3:17-CV-67-TCB
JOHN DOE #2; and JOHN DOE #3 : 
 :     JURY TRIAL DEMANDED
    *Plaintiffs*, : 
 : 
V. : 
 : 
CITY OF LAGRANGE, GEORGIA; : 
 : 
    *Defendant*. : 

## CERTIFICATE REGARDING FONT SIZE

I hereby certify that the **MOTION TO DISMISS PLAINTIFFS'
COMPLAINT** and **DEFENDANT CITY OF LAGRANGE, GEORGIA'S BRIEF
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** are
written in Times New Roman, 14 point font, double-spaced between lines, and with
proper margins as required by Local Rule 5.1 of the Northern District of Georgia.

This 21st day of July, 2017.

/s/ Jeffrey M. Todd

JEFFREY M. TODD
Attorney for Defendant
Georgia Bar No: 713738

LEWIS, TAYLOR & TODD, P.C.
205 N. Lewis Street, Suite 3
P.O. Box 1027
LaGrange, Georgia 30241
PHONE: 706-882-2501
FAX: 706-882-4905
EMAIL: jtodd@lttpc.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served a copy of the within and foregoing **MOTION TO DISMISS PLAINTIFFS' COMPLAINT** and **DEFENDANT CITY OF LAGRANGE, GEORGIA'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** upon the following persons by filing same with the Clerk of Court using the CM/ECF system which will automatically send email notification of the filing to the following attorneys:

Reed N. Colfax
Relman, Dane & Colfax PLLC
2009 Botulph Road
Santa Fe, New Mexico 87505

Justin B. Cox
National Immigration Law Center-Atl
1989 College Avenue, NE
Atlanta, Georgia 30317

Jaime L. Crook
Relman, Dane & Colfax PLLC
1225 19th Street, NW – Suite 600
Washington, DC 20036-2456

Sarah E. Geraghty
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia 30303-2122

Atteeyah E. Hollie
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia 30303

Mayra B. Joachin
National Immigration Law Center
3435 Wilshire Boulevard, Suite 2850
Los Angles, California 90010

Melissa S. Keaney
National Immigration Law Center
3435 Wilshire Boulevard, Suite 2850
Los Angles, California 90010

Alexa Milton
Relman, Dane & Colfax PLLC
1225 19th Street, NW – Suite 600
Washington, DC 20036-2456

Karen C. Tumlin
National Immigration Law Center
3435 Wilshire Boulevard, Suite 2850
Los Angles, California 90010

Joseph Wardenski
Relman, Dane & Colfax PLLC
1225 19th Street, NW – Suite 600
Washington, DC 20036-2456

This 21st day of July, 2017.

/s/ Jeffrey M. Todd
JEFFREY M. TODD
Attorney for Defendant
Georgia Bar No: 713738

LEWIS, TAYLOR & TODD, P.C.
205 N. Lewis Street, Suite 3
P.O. Box 1027
LaGrange, Georgia 30241
PHONE: 706-882-2501
EMAIL: jtodd@lttpc.com